UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JANICE E. SIMON, | Civil File No. 12-2754 (SRN/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY AND/ OR DECLARATORY JUDGMENT** |
| ANOKA COUNTY SOCIAL SERVICES And LISA GRAY, *individually and in her Representative capacity*, | |
| Defendants. | |

_____

### INTRODUCTION

Plaintiff Janice Simon moves the Court for a partial summary and/or declaratory judgment based upon the actions of Defendants Anoka County Social Services ("ACSS") and Lisa Gray ("Gray"). After concluding a flawed investigation into allegations of Maltreatment under the Vulnerable Adults Maltreatment Act ("VAMA") against Ms Simon on behalf of her disabled adult son, Gray unlawfully and without due process took Mahesh from his place of employment and placed him into adult foster care. It is undisputed that Gray, as a representative of ACSS, took no legal action under the VAMA nor initiated any due process of any kind prior to removing Mahesh from his mother's physical custody. In effect, Gray and ACSS unlawfully seized and removed Mahesh from his mother's physical custody without due process under the law.[1]

---

[1] Defendants' actions arguably fit within the criminal code's definition for kidnapping: "Whoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent or, if the person is under the age of 16 years, without the consent of the person's parents or other legal custodian, is guilty of kidnapping and may be sentenced as provided in subdivision 2. . . . to terrorize the victim or another ." Minn.

1

At the time of Gray and ACSS' actions, Ms Simon was the lawfully appointed guardian of Mahesh. The VAA specifically sets forth the legal mechanisms by which an emergency removal from the care of a guardian:

> (c) When necessary in order to protect a vulnerable adult from serious harm, the county social service agency shall immediately intervene on behalf of that adult to help the family, vulnerable adult, or other interested person by seeking any of the following:
> (1) a restraining order or a court order for removal of the perpetrator from the residence of the vulnerable adult pursuant to section 518B.01;
> (2) the appointment of a guardian or conservator pursuant to sections 524.5-101 to 524.5-502, or guardianship or conservatorship pursuant to chapter 252A;
> (3) replacement of a guardian or conservator suspected of maltreatment and appointment of a suitable person as guardian or conservator, pursuant to sections 524.5-101 to 524.5-502; or
> (4) a referral to the prosecuting attorney for possible criminal prosecution of the perpetrator under chapter 609.

Minn. Stat. § 626.557, subd. 10(c)(2012).

At no time did either of the Defendants, Gray or ACSS, initiate any judicial or quasi-judicial action prior to or at the time that Mahesh was removed from his home. No notice was given. No hearing was held. No opportunity to challenge the decision was offered and no neutral tribunal was proffered.

## UNDISPUTED FACTS

1. Mahesh R.[2] is the adoptive son of Janice Simon. At all times relevant herein and prior to the actions of Defendants ACSS and Gray, Mahesh resided with his mother and siblings in the City of Andover.

2. At all times relevant herein Janice Simon was the lawfully appointed guardian of Mahesh.

---

Stat. § 609.25, subd. 3. Certainly, given the opportunity to testify, Ms Simon will affirm that the state actions caused her terror for the safety of her child and unity of her family.

[2] The parties have agreed to use Mahesh's initials to protect his privacy.

3. Mahesh R. is a developmentally delayed (DD) adult and his mother sought and was granted guardianship over her son on the 13th of March 2006.

4. On or about the 22nd of March 2011, a report of maltreatment of Mahesh was made against Ms Simon.

5. Mary Banister, on behalf of ACSS conducted an investigation. Ms Banister concluded that Ms Simon had maltreated Mahesh physically, verbally and financially. The final determination from Ms Banister was dated the 29th of April 2011.

6. On the 3rd of May 2011, Defendant Gray went to Mahesh's place of employment without the knowledge or consent of his mother and guardian and removed him from his employment and home. Defendant Gray placed Mahesh into a foster home and then subsequently placed him into a group home for developmentally disabled adults. At no time did Defendant Gray initiate any legal action under the Vulnerable Adults Act prior to taking physical custody of Mahesh.

7. It was not until a month lapsed, on the 10th of June 2011, that Defendants ACSS and Gray brought a petition to appoint a public guardian for Mahesh R.

8. Lisa Gray is a social worker employed in that capacity with Defendant ACSS. She was at all times relevant herein the social worker appointed by ACSS to provide social services to Mahesh R.

9. Janice Simon has denied and continues to deny that she ever maltreated her son, Mahesh. She has timely appealed all decisions inapposite to her position.

### SUMMARY AND DECLARATORY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material

only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

There is no dispute of a material fact between the parties regarding Ms Simon's guardianship and the ACCS and Gray's removal of Mahesh from his mother's care and custody.

### ARGUMENT

Ms Simon filed a complaint in this matter wherein she alleged the Defendants' violated her right to due process under the U.S. Constitution and Minnesota State Constitution by denying her any process whatsoever prior to Defendants' removal of her son from her care and custody.

The motion before the Court is for partial summary and declaratory judgment based upon the Defendants' denial of due process at the time Defendant Gray took physical control over Mahesh at his place of employment and placed him into foster care with the notice to or consent from his guardian and parent. Defendants will argue that Ms Simon's subsequent ratification of the removal of Mahesh justified the initial invasion of her protected interests.

The question that is novel for this Court is to what degree does the parent and lawfully appointed guardian of a developmentally disabled adult child retains her liberty interest in the care and custody of an adult dependent son. In addition to this novel issue, Simon had a property interest in the guardianship of her son established under state law.

The Due Process Clause of the Fourteenth Amendment establishes three specific claims. First, A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.,* freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions õregardless of the fairness of the procedures used to implement them.ö *Daniels v. Williams,* 474 U.S., at 331, 106 S.Ct., at 664. As to these two types of claims, the constitutional

4

violation actionable under § 1983 is complete when the wrongful action is taken. *Id.,* at 338, 106 S.Ct., at 678 (STEVENS, J., concurring in judgments); *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S. Ct. 975 (1990).

The Due Process Clause, in addition to also encompasses a third type of protection, a guarantee of fair procedure. According to the Supreme Court in *Zinermon*, a § 1983 action may be brought for a violation of procedural due process. The deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law. Parratt,* 451 U.S., at 537, 101 S.Ct., at 1913; *Carey v. Piphus,* 435 U.S. 247, 259, 98 S.Ct. 1042, 1050 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property").[3] The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry examines the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law. In applying this test, the Supreme Court has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. See, *e.g., Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (" '[T]he root requirement' of the Due Process

---

[3] The Court in *Carey v. Piphus* explained that a deprivation of procedural due process is actionable under § 1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards. 435 U.S., at 266, 98 S.Ct., at 1053 (even if the deprivation was in fact justified, so the plaintiffs did not suffer any "other actual injury" caused by the lack of due process, "the fact remains that they were deprived of their right to procedural due process"). It went on to say, however, that in cases where the deprivation would have occurred anyway, and the lack of due process did not itself cause any injury (such as emotional distress), the plaintiff may recover only nominal damages. *Id.,* at 264, 266, 98 S.Ct. at 1052, 1053.

Clause" is ... "that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest'"; hearing required before termination of employment (emphasis in original)); *Parham v. J.R.,* 442 U.S. 584, 606-607, 99 S.Ct. 2493, 2506 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 18, 98 S.Ct. 1554, 1564 (1978) (hearing required before cutting off utility service); *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (at minimum, due process requires "*some* kind of notice and ... *some* kind of hearing" (emphasis in original); informal hearing required before suspension of students from public school); *Wolff v. McDonnell,* 418 U.S. 539, 557-558, 94 S.Ct. 2963, 2975 (1974) (hearing required before forfeiture of prisoner's good-time credits); *Fuentes v. Shevin,* 407 U.S. 67, 80-84, 92 S.Ct. 1983, 1994-96 (1972) (hearing required before issuance of writ allowing repossession of property); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018 (1970) (hearing required before termination of welfare benefits), See *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S. Ct. 975 (1990).

In the case before the Court, specific due process prior to the deprivation of Simon's interest established as guardian to her son, is set forth in state law.  Defendants were required to initiate either an action in probate court to modify the or terminate the guardianship or seek emergency relief under the Vulnerable Adults Maltreatment Act.  Neither process was undertaken prior to the deprivation.

I. **JANICE SIMON'S HAD AND HAS A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST IN THE CARE AND CUSTODY OF HER DEPENDENT ADULT SON.**

To support a procedural due process claim, plaintiff must first show that he was deprived of a significant interest protected under the Constitution. *Addington v. Texas,* 441 U.S. 418, 425,

99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). This interest can arise either from the Constitution itself or from state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868 (1983).

Once Ms Simon has established that she was deprived of a significant liberty or property interest, the court must determine whether she suffered this deprivation without due process. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). This determination is made by asking õwhat process the State provided, and whether it was constitutionally adequate.ö *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983 (1990).

The state's removal of a disabled adult child who is the subject of a lawful guardianship constitutes an interference with the liberty interest of the parent and guardian thus triggering the procedural protections under the Vulnerable Adult Act and the Fourteenth Amendment.  There are few rights more fundamental in and to our society than those of parents and guardians to retain custody over the care of their dependent children, and to rear those children as they deem appropriate. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394 (1982); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 554ó55 (1978); *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442 (1944); *Pierce v. Society of Sisters,* 268 U.S. 510, 534ó35, 45 S.Ct. 571, 573ó74 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626 (1923); *see also Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681 (1978). To say that õthe institution of the family is deeply rooted in this Nation's history and tradition,ö *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1938 (1977) (plurality), as the Supreme Court often has said, *see e.g., Michael H. v. Gerald D.,* 491 U.S. 110, 123ó24, 109 S.Ct. 2333, 2341ó42 (1989)(plurality); *Smith v. Organization of Foster Families,* 431 U.S. 816, 845, 97 S.Ct. 2094, 2110 (1977), borders on understatement. The unitary family is the foundation of society. Through the intimate

relationships of the family, our children are nurtured, tutored in the values and beliefs of our society, and prepared for life. *See Parham v. J.R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 2504 (1979) ("[P]arents generally have the right, coupled with the high duty, to recognize and prepare [their children] for additional obligations.") (quoting *Pierce,* 268 U.S. at 535, 45 S.Ct. at 573). Through these relationships, our children— indeed, we, as parents— are strengthened, fulfilled and sustained. The bonds between parent and child are, in a word, sacrosanct, and the relationship between parent and child inviolable except for the most compelling reasons. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 342 (4th Cir. 1994).

Mahesh is the dependent adult child of Ms Simon. His dependency, based upon his developmental disabilities, renders his relationship with Ms Simon akin to a parent-minor child relationship. But even if the Court does not consider Mahesh's dependency to be similar to the constitutionally-protected liberty interest a parent has in a minor child, the legal guardianship offers, at a minimum, a protected property interest that cannot be deprived by state actors without due process.

II.    JANICE SIMON'S HAD AND HAS A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST IN THE GUARDUANSHIP OF HER DEPENDENT ADULT SON.

As this Court recently found in *North Dakota v. Swanson*, 2012 WL 4479246 (D.Minn. 2012):

> The Fourteenth Amendment prohibits state action that deprives "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The possession of a protected life, liberty, or property interest is a condition precedent to the government's obligation to provide due process of law. *Movers Warehouse, Inc. v. City of Little Can.,* 71 F.3d 716, 718 (8th Cir.1995). Procedural due process requires that procedures provided by the state in effecting deprivation of liberty or property are adequate in light of the affected interest. *Keating v. Neb. Pub. Power Dist.,* 660 F.3d 1014, 1017 (8th Cir.2011). Courts examine procedural due process in two steps: (1) first, whether there exists a liberty or property interest, which has been interfered with by the

state; and if so, (2) whether sufficient procedural safeguards are employed to assure the deprivation of that interest is not arbitrary. *Id.* *North Dakota v. Swanson*, at *18.

The balancing of the private interests with the government actions has been accomplished by the Minnesota state legislature through the statutory schemes which establishes the process due to Ms Simon prior to the deprivation of the care and custody of her son under the guardianship. The uncontested fact that the Defendants initiated no procedural protections *prior* to the deprivation under the state statutes should end further inquiry by the Court.

Under the current statute for guardianships:

> A person becomes a guardian of an incapacitated person by a parental or spousal appointment or upon appointment by the court. The guardianship continues until terminated, without regard to the location of the guardian or ward.

Minn. Stat. § 524.5-301. Minn. Stat. § 524.5-317 permits the modification of a guardianship upon a *petition* to the court or upon the death of the ward. In addition, procedural safeguards have been established by the legislature to protect vulnerable adults wherein maltreatment has been alleged and found.

Minnesota Courts have recognized that the interests at stake in a guardianship proceeding are constitutionally protected interests. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976). *Heddan v. Dirkswager,* 336 N.W.2d 54, 59 (Minn.1983) (adopting the *Mathews* analysis); *In Re the Conservatorship of Foster*, 547 N.W.2d 81 (1996).[4] When considering a procedural due process challenge, the reviewing court applies the three-part balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976). *Heddan v. Dirkswager,* 336 N.W.2d 54, 59 (Minn.1983) (adopting the *Mathews* analysis); *In Re the Conservatorship of Foster*, 547 N.W.2d 81 (1996). Under the *Mathews* test for a facial assault on the constitutionality of a state statute,

---

[4] The district court has recognized the right to notice and the opportunity to be heard as part of the probate process related to guardianships. *Minnesota Voters Alliance v. Ritchie*, 890 F.Supp.2d 1106, 1117 (D. Minn. 2012).

the courts are to determine whether the process adequately balances: (1) the private interest affected by the government's action; (2) the risk that the process provided will result in an erroneous deprivation of the private interest and the probable value of additional or substitute procedural safeguards; and (3) the state's interest in the procedures provided, including the administrative burden and expense the additional procedures sought would require. *Id.* However, Ms Simon is not contesting the constitutionality of the statutes or asking for further procedural protections outside those statutorily mandated. Instead, Ms Simon is challenging the deprivation of due process set forth in the state statutes consistent with the analysis set forth in *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S. Ct. 975 (1990).

Defendants had at their disposal an emergency removal procedures set forth in the Vulnerable Adult Maltreatment Act. Under Minnesota Statutes chapter 626.557, a state actor may modify or terminate a private guardianship:

> (c) When necessary in order to protect a vulnerable adult from serious harm, the county social service agency shall immediately intervene on behalf of that adult to help the family, vulnerable adult, or other interested person by seeking any of the following:
> (1) a restraining order or a court order for removal of the perpetrator from the residence of the vulnerable adult pursuant to section 518B.01;
> (2) the appointment of a guardian or conservator pursuant to sections 524.5-101 to 524.5-502, or guardianship or conservatorship pursuant to chapter 252A;
> (3) replacement of a guardian or conservator suspected of maltreatment and appointment of a suitable person as guardian or conservator, pursuant to sections 524.5-101 to 524.5-502; or
> (4) a referral to the prosecuting attorney for possible criminal prosecution of the perpetrator under chapter 609.

Minn. Stat. § 626.557, subd. 10(c)(2012). Defendants did initiate a cause of action in state court under the established due process procedures but *after* the deprivation of Ms Simon's interest took place. Prior to the deprivation, Defendants failed to initiate even the barest of due process such as the submission of an affidavit in support of an *ex parte* order.

10

In this case, the Minnesota legislature already struck that balance by providing procedural safeguards for the modification or termination of a guardianship. Minn.Stat. § 252A.21, subd. 2; Minn. R. 9525.3050, subpt. 1, as well as emergency protective procedures for vulnerable adults. Rather than avail themselves of the established procedural due process, the Defendants deprived Ms Simon of her right with no known procedural safeguards.

## CONCLUSION

Consistent with the undisputed record before the Court, the statutorily established liberty and property interests in the guardianship, the state and federal constitutional rights to due process as set forth in state law and the legislatively mandated process that was due to Ms Simon prior to the deprivation of those interests, the Plaintiff respectfully requests that the Court find in favour of Ms Simon by declaring the actions of the Defendants violative of her rights and interests.

Respectfully submitted,

**KANE EDUCATION LAW, LLC**.

Dated: 6 June 2013

 /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane /ID # 220243
1032 Grand Avenue
Suite 202
Saint Paul, Minnesota 55105
Telephone: 651/222-8611
Facsimile: 651/221-2623
mkane@kaneeducationlaw.com